# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-1070/3266

_____

| | |
|---|---|
| Beverly Joyce Taylor, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| Southwestern Bell | * |
| Telephone Company, | * |
| | * |
| Defendant - Appellee. | * |

_____                    Appeals from the United States
                               District Court for the
No. 00-2914                    Eastern District of Missouri.

_____

| | |
|---|---|
| Beverly Joyce Taylor, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| Southwestern Bell | * |
| Telephone Company, | * |
| | * |
| Defendant - Appellee, | * |
| | * |
| Communications Workers | * |
| of America,  AFL-CIO, | * |
| | * |
| Movant - Appellant. | * |

_____

Submitted: April 12, 2001

Filed: May 22, 2001
_____

Before HANSEN, MAGILL, and MURPHY, Circuit Judges.
_____

MURPHY, Circuit Judge.

Before the court are several related appeals. They grow out of an employment discrimination case filed by Beverly Taylor, alleging that Southwestern Bell Telephone Company (Southwestern Bell) had terminated her employment because of her race and disability. Southwestern Bell moved for summary judgment, and the district court granted the motion and dismissed Taylor's case. While Taylor's case was still pending in the district court, her union initiated grievance procedures on her behalf and later filed a demand for arbitration. Communications Workers of America (CWA) had a collective bargaining agreement with Southwestern Bell, and Taylor was a member of CWA Local 6301.

After summary judgment was entered, Southwestern Bell filed a motion in the district court to enjoin arbitration but it did not provide notice of the motion to CWA. Only Southwestern Bell appeared at the motion hearing, and the district court issued the requested injunction. When CWA learned of the injunction, it unsuccessfully moved for relief and for permission to intervene. Taylor appeals from the judgment dismissing her discrimination case (No. 00-1070) and attempts to raise an untimely appeal of the injunction (No. 00-3266). CWA appeals both the denial of its motion to intervene and the injunction enjoining arbitration (No. 00-2914). We affirm the judgment in favor of Southwestern Bell and dismiss Taylor's other appeal as untimely, but we remand with instructions to vacate the injunction.

I.

Taylor, an African American woman who suffers from depression, worked at Southwestern Bell from October 24, 1981 until February 26, 1998. At the time her employment was terminated, she had been a Revenue Management Representative in the Credit and Collections department for a little over two years. Taylor had had an excellent work record at Southwestern Bell and no disciplinary history.

In February 1998, Southwestern Bell received a complaint from Ann Thomas reporting that one of its employees had been accessing the account of her mother, Willie Mae Brooks. After the complaint was logged, Taylor accessed the Brooks account and saw an entry indicating that someone had made an employee access complaint. Taylor went to her supervisor and admitted that she was the employee who had been accessing the Brooks account. She said that she had been receiving threatening phone calls from the son of Willie Mae Brooks, Robert Brooks, who was the father of her child. She was afraid that he would physically harm her and wanted to keep track of his whereabouts. Taylor claimed to her supervisor that Ann Thomas had given her permission to access her mother's account since it would reveal the location from which Robert Brooks was making collect calls.

Access of a customer account without both a valid business purpose and customer permission violates the Southwestern Bell Code of Business Conduct. Employees are informed that violations of the Code may lead to disciplinary action, including dismissal. Southwestern Bell suspended Taylor and later terminated her for accessing a customer account without a valid business purpose. Its investigation revealed that Taylor had accessed the Brooks account at least 450 times during a single week.

Taylor filed a claim with the Equal Employment Opportunity Commission (EEOC) and the Missouri Human Rights Commission, alleging that her termination had

been based on her race and disability, in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Missouri Human Rights Act. Taylor received a right to sue letter from the EEOC, and she filed an action in federal court. After the district court appointed an attorney to represent Taylor, she filed an amended complaint in which she sought reinstatement, back pay, front pay, compensatory and punitive damages, and retroactive seniority and benefits. After discovery was complete, Southwestern Bell moved for summary judgment on the basis that Taylor had not shown that she was discriminated against on the basis of her race or that she had a disability as defined by the ADA. The court granted the motion, and Taylor filed a timely notice of appeal pro se.

Taylor argues on appeal that her disability claims should not have been dismissed because race was a factor in her dismissal and because her conduct in accessing a customer account was caused by her depression and her fear of Robert Brooks. She says that a white employee who had accessed accounts without customer approval or a valid business purpose had not been terminated and that Southwestern Bell made the decision to terminate her before it gave her a hearing. Southwestern Bell responds that it was proper to dismiss Taylor's lawsuit because she did not show that its stated reason for terminating her was pretextual.

To make a prima facie showing of disability discrimination in a case such as this, the plaintiff must show that she has a disability as defined by the ADA, that she was qualified to perform the essential functions of her position, and that she suffered an adverse employment action under circumstances that give rise to an inference of discrimination. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999); Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1021, n.4 (8th Cir. 1998) (en banc) (standards used under the ADA and the MHRA are the same). In this case the relevant part of the ADA definition of disability is a physical or mental impairment that substantially impairs a major life activity. See 42 U.S.C. § 12102(2)(A). Examples of major life activities are caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working.  See 29 C.F.R. § 1630.2(i).

Taylor's complaint alleged that she suffered from depression that substantially limited her "major life activities of coping with the normal frustrations of daily living." Taylor's deposition testimony showed that she had no difficulty in taking care of herself or in working and that she had never told Southwestern Bell that she had a disability or requested that it make accommodations for her depression.  Taylor has not shown that her depression substantially impaired any major life activity, and the district court did not err when it determined that Taylor did not show she was disabled under the ADA.  Cf. Greer v. Emerson Elec. Co., 185 F.3d 917, 921 (8th Cir. 1999).

To make a prima facie showing of race discrimination in a case such as this, the plaintiff must show that she was a member of a protected group, that she was performing her job at a level that met her employer's legitimate expectations, that she suffered an adverse employment action, and that there are facts that permit an inference of discrimination.  See Ghane v. West, 148 F.3d 979, 981 n.3 (8th Cir. 1998).  The only inference of discrimination Taylor raised was the assertion that three individuals who were not terminated may have accessed customer files without a valid business reason.   Although an inference of discrimination may be drawn from evidence that a plaintiff was treated less favorably than other similarly situated employees who are not in the protected class, see Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999), Taylor presented no evidence showing that the other individuals were similarly situated to her.  The court did not err in ruling that Taylor had not made a prima facie case of race discrimination.  Taylor claims for the first time on appeal that an inference of discrimination may be drawn because Southwestern Bell made the decision to terminate her before it gave her a hearing. We decline to reach this issue because it was not raised below, see Entergy, Arkansas, Inc. v. Nebraska, 241 F.3d 979, 986 n.1 (8th Cir. 2001), and we conclude that the district court did not err when it dismissed Taylor's action.

## II.

Taylor was a member of CWA Local 6301 at the time she was terminated from her employment at Southwestern Bell, and CWA had collective bargaining agreements with her employer. CWA is an international labor union, headquartered in Washington, D.C., that represents non-management employees in the telecommunications industry. CWA had two collective bargaining agreements with Southwestern Bell that covered terms of employment: the 1995 General Application Collective Bargaining Agreement (General Agreement) and the 1995 Departmental Collective Bargaining Agreement (Departmental Agreement). One of the agreements includes a provision that Southwestern Bell will not terminate an employee without "just cause." Under the agreements, CWA was charged with the duty of representing the interests of its members, pursuing grievances, and administering the collective bargaining agreements on behalf of its members.

While Taylor's action was still pending, the union filed a grievance pursuant to Article XIX of the Departmental Agreement. The grievance was not resolved during the two step procedure provided under that agreement, and the union demanded arbitration pursuant to Article IV of the General Agreement. The union described the issue for arbitration to be whether "[t]he company acted in bad faith and without just cause by dismissing Beverly Taylor." It sought Taylor's reinstatement and for her to be "made whole."

After the parties selected an arbitrator and scheduled an arbitration hearing, summary judgment was granted in Taylor's discrimination case and Southwestern Bell moved on the grounds of res judicata to enjoin her and anyone acting on her behalf from arbitrating her termination. Southwestern Bell served its motion for an injunction against arbitration on Taylor's attorney, who sent her a copy of the motion with a letter stating that he was withdrawing from the case. Southwestern Bell did not serve CWA with notice of the motion, however, or attempt to inform it about the hearing.

Southwestern Bell appeared alone before the district court to argue for an injunction, and the court issued an order on March 30, 2000 enjoining Taylor and CWA, and anyone acting on their behalf, from proceeding with the arbitration. The court stated that although CWA was not a named party to the federal action, it was in privity with Taylor and that arbitration was barred by res judicata. It cited the All Writs Act, 28 U.S.C. § 1651, as authorizing injunctive relief to protect its prior judgment.

CWA was unaware an injunction had been issued until the American Arbitration Association informed it on April 17, 2000 that the arbitration could not proceed. Soon after receiving this information, CWA moved on April 28, 2000 to intervene and to be relieved of the injunction. The district court stated in its order denying the motion that Taylor's interests were identical to those of CWA and that she could have adequately protected the union's interests if she had contested the injunction.

CWA wants the injunction vacated. It claims that the court erred in denying its motion to intervene and in issuing the injunction, that res judicata does not bar the arbitration, that the court did not assess the equities, and that the court lacked jurisdiction because of the Norris-LaGuardia Act, 29 U.S.C. § 101.

Southwestern Bell argues that CWA's motion to intervene was properly denied because it was untimely. In determining timeliness, a court should consider how far the proceedings have progressed, prejudice to other parties from any delay, and the reason for any delay. See Nevilles v. EEOC, 511 F.2d 303, 305 (8th Cir. 1975) (per curiam). CWA has shown that its delay in moving to intervene was unavoidable. Even though Southwestern Bell knew that CWA had interests that would be impaired by the injunction, it did not serve CWA with notice of its motion. CWA learned of the injunction only after the American Arbitration Association informed it that arbitration could not proceed. It acted promptly and filed its motion to intervene eleven days after hearing of the injunction. In these circumstances, CWA's motion was not untimely.

A timely motion to intervene should be granted if the proposed intervenor shows: 1) that it has an interest in the action; 2) that the interest may be impaired; and 3) that the interest is not adequately protected by a current party to the action. See Sierra Club v. Robertson, 960 F.2d 83, 85 (8th Cir. 1992). CWA had an interest in the arbitration because it has the duty to administer the collective bargaining agreements and to pursue grievances with Southwestern Bell, see Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 563 (1990), and its interests could be impaired by the injunction. The remaining question is whether Taylor could have adequately represented CWA's interests if she had appeared at the injunction hearing.

The adequacy of representation depends on the similarity of interests between the proposed intervenor and the parties already before the court. See Sierra Club, 960 F.2d at 86. A labor union is charged with the duty of protecting the interests of its members as a group, and a union's interests are therefore broader than those of any one of its members. See United States v. White, 322 U.S. 694, 701-02 (1944); see also Vaca v. Sipes, 386 U.S. 171, 177 (1967). In the discharge of their duties unions negotiate and enforce collective bargaining agreements, which are contracts between unions and employers that govern hiring, work, and pay for all employees in a unit. See J.I. Case Co. v. N.L.R.B., 321 U.S. 332, 334-35 (1944). The signatories to the collective bargaining agreements affecting Taylor are CWA and Southwestern Bell. Taylor was not a signatory and could only seek to vindicate her personal rights rather than broader issues under the collective bargaining agreements. CWA has an interest in working to ensure that Southwestern Bell adheres to the provisions of the agreements, including the "just cause" clause which the parties agreed to have resolved by arbitration in the event of any disagreement about its application.

We conclude that because Taylor's interests are different from CWA's she could not have adequately represented its rights, and the record also would not support a finding of adequate representation. Taylor did not attend the hearing on the motion for an injunction even though she had notice of it. She also did not file her pro se notice

of appeal from the injunction within 30 days as required by Fed. R. App. P. 4(a), and her untimely appeal must be dismissed for lack of jurisdiction. See Browder v. Dir., Dept. of Corr. of Illinois, 434 U.S. 257, 264 (1978); Miller v. Lincoln County, 171 F.3d 595, 595 (8th Cir. 1999) (per curiam). For these reasons the district court erred in denying CWA's motion to intervene.

CWA asserts that the district court did not have jurisdiction to issue the injunction under the Norris-LaGuardia Act, which provides:

> No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101. The Act is meant to effectuate the strong federal policy of encouraging arbitration by making an injunction a last line of defense available only when other reasonable methods fail. See Brotherhood of R.R. Trainmen, Enter. Lodge, No. 27 v. Toledo P. & W. R.R., 321 U.S. 50, 58-59 (1944). This policy generally requires that affirmative defenses, such as res judicata, be decided by the arbitrator, rather than by the courts. See Weaver v. Florida Power & Light Co., 172 F.3d 771, 773-74 (11th Cir. 1999). Southwestern Bell cites In re Y&A Group Sec. Litig., 38 F.3d 380 (8th Cir. 1994), to support its argument that the district court had authority to enjoin the arbitration on res judicata grounds in order to protect its prior judgment under the All Writs Act. In re Y&A is not controlling, however; it did not involve a labor dispute and it grew out of a prior consent judgment.

-9-

The issue CWA sought to arbitrate was a labor dispute as defined by the Norris-LaGuardia Act because it involved a "controversy concerning terms or conditions of employment." 29 U.S.C. § 113(c). Under the Act a court may not issue an injunction in a labor dispute unless it makes certain findings, including finding that an unlawful act has been threatened or has been committed, that substantial and irreparable injury to the complainant's property will follow if the injunction is not issued, and that the complainant has no remedy at law. See id. at § 107. Had the court required notice to CWA before ruling on the motion for an injunction, it would have been more broadly advised. And if it had allowed CWA to intervene after the fact, it would have had an opportunity then to make necessary findings. Such findings have not been made, however, and the district court erred when it issued the injunction without regard to the Act. See Lauf v. E.G. Shinner & Co., 303 U.S. 323, 330 (1938).

Southwestern Bell argues that the Act does not apply because of a statutory exception for cases under Title VII and the ADA. It cites the following language from Title VII: "The provisions of [the Norris-LaGuardia Act] shall not apply with respect to civil actions brought under this section." 42 U.S.C. § 2000e-5(h); see also 42 U.S.C. § 12117(a) (incorporating the provision into the ADA). Under this statutory authority courts may issue injunctions to protect individuals from discrimination. See Culpepper v. Reynolds Metals Co., 421 F.2d 888, 894 (5th Cir. 1970); Evans v. Local Union 2127, Int'l Bhd. of Elec. Workers, AFL-CIO, 313 F.Supp. 1354, 1358-59 (N. D. Ga. 1969). CWA's claim that Southwestern Bell had violated the "just cause" provision of the collective bargaining agreement was not "brought under" either Title VII or the ADA, and the precise issue for arbitration was not identical to the issues in her civil action.[1] See Alexander v. Gardner-Denver Co., 415 U.S. 36, 49-50 (1974) (contractual

---

[1]In a civil action claiming discrimination, a plaintiff must show that the employer based its decision to terminate on an illegal criterion, and the employer can rebut that

rights and obligations of unions and employers under collective bargaining agreements are independent from the rights conferred on individual employees by statute, such as Title VII and ADA).  Because the court lacked jurisdiction to issue its injunction, its order must be vacated.

III.

In sum, we affirm the judgment dismissing Taylor's discrimination claims, dismiss her untimely appeal of the injunction enjoining arbitration, and reverse the denial of CWA's motion to intervene and the order granting an injunction.  We remand with instructions to vacate the injunction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

by showing a nondiscriminatory reason for termination.  See Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 292 (8th Cir. 1982).  In an arbitration under the "just cause" provision, however, the employer needs to show not only that it had a nondiscriminatory reason, but also that it was a good reason, not reached in bad faith.  See id.  As pointed out by counsel at oral argument, an arbitrator's inquiry could extend beyond that of a court or jury in a discrimination action, to include such a question as whether the employee's punishment was disproportionate.  The issue for arbitration is not necessarily the same, nor are the interests of the parties.  See Black Clawson Co., Inc. v. Kroenert Corp., 245 F.3d 759, 763 (8th Cir. 2001); Tyus v. Schoemehl, 93 F.3d 449, 455-56 (8th Cir. 1996).